**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

UNITED STATES OF AMERICA,

**Plaintiff,**

**v.**

FELIX MORALES-SANABRIA [2],

**Defendants.**

**CRIMINAL NO.** 08-272 (FAB)

**MEMORANDUM AND ORDER**

BESOSA, District Judge.

On May 15, 2009, defendant Felix Morales-Sanabria ("Morales" a/k/a "El Chapo") was convicted of conspiracy to possess with intent to distribute a controlled substance, conspiracy to import a controlled substance, possession with intent to distribute cocaine, and possession with intent to distribute heroin. (Docket No. 215.) Shortly thereafter, defendant Morales appealed, and the First Circuit Court of Appeals found that, due to the effect of "several erroneous evidentiary rulings", defendant Morales was entitled to a new trial. (Docket No. 365 at 2-3.) Following entry of the circuit court's opinion, Morales filed a motion requesting that he be granted bail pending his new trial. (Docket No. 381.) This motion was denied by the Court. (Docket No. 382.) Defendant Morales appealed the order denying bail, and the circuit court

requested this Court to transmit "a statement of reasons for its determination." (Docket Nos. 383 & 391.) The government has filed an opposition to defendant's bail request (Docket No. 392), and the defendant has filed a reply. (Docket No. 393-1.) In compliance with the First Circuit Court of Appeals' order, set forth is a statement of findings of fact and statement of reasons for the determination that defendant Morales's bail has been **DENIED** pending his new trial.

## I. Factual Background

The Court provides a concise overview of the relevant facts at issue. Defendant Morales was a commercial fisherman who was convicted of multiple drug trafficking counts (Docket No. 365 at 2) in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A) (possession with intent to distribute five kilograms or more of heroin and cocaine) and 21 U.S.C. §§ 952(a) and 963 (conspiracy to import five kilograms or more of cocaine and one kilogram or more of heroin). (Docket No. 249 at 1.) Defendant Morales' conviction "related to three separate shipments of drugs, two of cocaine and a third of cocaine, heroin, and ecstacy, brought by boat from the Dominican Republic into Puerto Rico between November 2006 and April 2007." (Docket No. 365 at 2.)

Testimony at trial revealed that the first shipment contained between 90 and 115 kilograms of cocaine (with 20 kilos being given to El Chapo as payment), the second shipment contained approximately 110 kilograms of cocaine (of which El Chapo retained 20 kilograms as payment), and the third shipment contained around 100 kilograms of cocaine, four packages of heroin, and 26,000 ecstacy pills. (Docket No. 365 at 4-7.) Testimony also revealed that "El Chapo" was given certain coordinates at which to meet a "mother ship" which had sailed from the Dominican Republic with the drugs. The drugs were transferred to El Chapo's fishing boat for the trip to Puerto Rico, where the drugs were off-loaded and were provided to members of the drug-trafficking organization (some of which testified for the government at trial) after "El Chapo" was paid with kilos of cocaine. This Court determined that defendant Morales' convictions and the quantity of illegal substances involved established a Base Offense Level of 38. (Docket No. 284 at 43.) Due to his role as captain of a vessel that unlawfully imported controlled substances, a two-level enhancement was warranted, and due to the fact that he acted in a supervisor capacity (as a boat captain), an additional three-level enhancement was warranted, thus equaling a Total Offense Level of 43. Id. at 43-44. The Court further determined that "the guideline

imprisonment range in this particular case is imprisonment for life"; however, defendant Morales was sentenced to "a term of 50 years as to each count to be served concurrently to each other." Id. at 44-45.

**II. Legal Standard and Analysis**

In deciding whether defendant Morales should be eligible for bail as he awaits his new trial, the Court follows the standard articulated in The Bail Reform Act of 1984, 18 U.S.C. § 3141, *et. seq.*, at § 3142(e), which governs the rules for detention of a defendant before trial. 18 U.S.C. § 3142(e) reads in relevant part:

> "(1) [I]f, after a hearing[1] pursuant to the provisions of subsection (f) of this section, the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community, such judicial officer shall order the detention of the person before trial.
>
> (2) In a case described in subsection (f)(1) of this section, *a rebuttable presumption arises that no condition or combination of conditions will reasonably assure the safety of any other person and the community* if such judicial officer finds that–
>
> (A) the person has been convicted of a Federal offense that is described in subsection (f)(1) of this

[1] Notably, defendant Morales has not requested a hearing; thus, the Court uses the facts established at trial to guide its analysis.

> section, or of a State or local offense that would have been an offense described in subsection (f)(1) of this section if a circumstance giving rise to Federal jurisdiction had existed . . . ." (Emphasis added).

The relevant portion of subsection (f)(1) reads as follows:

> (B) an offense for which the maximum sentence is life imprisonment or death;
>
> (C) an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act (21 U.S.C. 801 et seq.), the Controlled Substances Import and Export Act (21 U.S.C. 951 et seq.), or chapter 705 of title 46.

Defendant Morales was convicted of a federal offense "for which the maximum sentence is life imprisonment" and "for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act and the Controlled Substances Import and Export Act". See 18 U.S.C. § 3142(f)(1)(B),(C). Thus, "a rebuttable presumption arises that no condition or combination of conditions will reasonably assure the safety of any other person and the community." 18 U.S.C. § 3142(e)(2). In order to rebut the triggered statutory presumption, defendant "must present evidence which demonstrates that 'what is true in general is not true in his particular case . . . .'" United States v. Rivera-Ibarrondo, 743 F.Supp.2d 81, 84 (D.P.R. 2010) (citing United States v. Jessup, 757 F.2d 378, 384 (1st Cir. 1985)). Because "Congress intended the presumption to have a practical effect", the "strength of the

rebuttable presumption is considered along with the other relevant factors in 18 U.S.C. § 3142(g)." Id.

According to section 3142(g), the Court will take into account the following factors to determine "whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community": (1) the nature and circumstances of the offense charged, (2) the weight of the evidence against the person, (3) the history and characteristics of the person, and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. 18 U.S.C. § 3142(g). The Court addresses each element in turn.

**A. Nature and Circumstances of the Offense Charged**

Defendant Morales' conviction of conspiring to import hundreds of kilograms of cocaine, several kilos of heroin and thousands of ecstasy pills and possessing with intent to distribute cocaine and heroin, in which he acted as the captain of a vessel, thus serving in a supervisory capacity of the criminal acts, presumes dangerousness. See Rivera-Ibarrondo, 743 F.Supp.2d at 84 (finding that "[t]he nature and circumstances of the offense, size and extent of enterprise, identity of the drugs involved, role of this offender, severity of the penalties and strength of the

government's case weigh heavily in this decision.") Morales was charged with participating in a large conspiracy to import and possess with intent to distribute a variety illegal controlled substances, totaling over 300 kilograms in weight. This factor weighs in favor of defendant Morales' detention prior to his trial.

**B. Weight of Evidence Against Morales**

The evidence at trial was sufficient to allow a jury to convict defendant Morales of all the crimes he was charged with in the indictment. The government provided the testimony of three cooperating witnesses who testified about the drug conspiracy and the three shipments of illegal controlled substances from the Dominican Republic. (Docket No. 392 at 7.) Two of the witnesses positively identified defendant Morales as "El Chapo." Id. Defendant Morales alleges that due to the circuit court's holding that the defendant is entitled to a new trial because of certain erroneous evidentiary rulings, he will be able to present a mistaken identity defense and an alibi defense that will discredit the testimony of the government's witnesses and weaken the case against him. (Docket No. 393-1 at 2-3.) The Court is unable to assess the strength of Morales' defenses at this juncture; however, the fact that Morales was previously convicted in his previous trial of every crime that he was charged with committing, along

with four co-defendants, is proof that the government has a strong case against defendant Morales. Thus, this factor weighs in favor of detaining him prior to his trial.

**C. History and Characteristics of Morales**

Defendant Morales maintains that his history of compliance with previous bail conditions granted by the magistrate judge prior to his first trial supports the fact that he is not a risk of flight or a danger to the community if released on bail. (Docket No. 393-1 at 1-2.) He further states that he "has no prior history of convictions and has always been employed." Id. Alternatively, the government posits that although defendant Morales has no criminal history, his personal history and characteristics favor detention because he has limited ties to the community: he is unmarried, a self-employed boat captain, has hardly any assets (his home has been seized by the government and his bail money would come from a family member), he is skilled in building and operating boats, and finally, he has connections to and has traveled before to the Dominican Republic. (Docket No. 392 at 7-8.) The government argues, and the Court agrees, that defendant's lack of financial and personal connection to the community and his proven capacity to travel easily to the Dominican

Republic put him in risk of flight. Thus, this factor also weighs in favor of defendant's detention prior to his trial.

**D. Nature and Seriousness of Danger of Morales if Released**

Defendant Morales was charged with and found guilty of conspiring to and participating in the integral activities of an international drug organization. In determining the danger to the community in drug conspiracy cases, "significant consideration" must be given to "the drug network's ability to continue to function while the defendants await trial" and the "significant risk of pretrial recidivism." Rivera-Ibarrondo, 743 F.Supp.2d at 84. Furthermore, the fact that Congress has imposed a "rebuttable presumption" of dangerousness to the community in cases where a maximum term of imprisonment of ten years or more is prescribed in cases of drug conspiracy and import and export cases weighs in favor of Morales' detention prior to his trial. Defendant Morales has failed to rebut the statutory presumption of detention, and an analysis of the relevant factors shows that his release prior to trial would pose a risk of flight and a danger to the community. Thus, defendant Morales' motion requesting grant of bail pending trial is **DENIED** and he shall be detained pending his retrial.

**CONCLUSION**

Defendant Morales' motion for grant of bail pending trial is **DENIED.**

**IT IS SO ORDERED.**

San Juan, Puerto Rico, December 22, 2011.

s/ Francisco A. Besosa
FRANCISCO A. BESOSA
United States District Judge